8243

## McGRATH BROS. v. CHARLESTON & WESTERN CAROLINA RY.

1. CARRIER—FREIGHT.—Where goods reach their destination in a damaged condition it is the duty of the consignee to receive and sell them at the nearest market price, deduct the amount from the value of the goods and file claim against the carrier for the balance. *Berley* v. *R. R.,* 82 S. C. 232, *explained.*

2. IBID.—IBID.—But where the value of the goods in their damaged condition is so small that it would be probably consumed in the handling, a judgment for their full value is sustained after refusal to charge the above stated doctrine.

3. REHEARING refused.

Before WATTS, J., Abbeville, March, 1911.    Affirmed.

Action by McGrath Bros. against Charleston & Western Carolina Railway. Defendant appeals from Circuit judgment sustaining judgment of Magistrate M. E. Hollingsworth.

*Mr. W. P. Greene,* for appellant, cites: 38 S. C. 89; 5 Rich. 462; 7 Rich. 190; 79 S. C. 300; 82 S. C. 307, 377; 122 S. W. 776; 119 S. W. 893; 123 N. W. 776; 118 S. W. 175; 63 S. E. 17; 85 N. E. 895; 129 Ill. 79.

*Mr. Wm. N. Graydon,* contra, cites: 82 S. C. 232.

The opinion in this case was filed June 12, 1912, and held up on petition for rehearing until

July 5, 1912.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   The plaintiffs, blacksmiths and wheelwrights at McCormick, S. C., purchased in Savannah, Georgia, two lengths of steel shafting and other hardware. The goods were shipped over the defendant's railroad, and on arrival at McCormick the shafting was found to be so bent as to be unfit for the use intended.   The plaintiffs refused to receive the shafting from the carrier and duly presented their claim for $7.15, the entire value of the two pieces, and 77 cents freight.   The defendant having failed to pay the claim, this action was brought in the magistrate's court for $7.90 and $50, the statutory penalty.

The only witness in the case was J. T. McGrath, one of the plaintiffs, who testified that the bent shafting was of no use to the plaintiffs, but that it was worth twenty-five to thirty-five cents a hundred pounds as old iron.

Defendant's counsel asked the magistrate to instruct the jury to find a verdict for the plaintiff for the amount of the claim, $7.90, less twenty-five cents a hundred pounds, the value of the shafting as old iron.   This request was refused, and defendant then requested the following charge: "That because property is damaged in shipment a person cannot abandon it as long as it has a value, but must receive the same, and if he cannot use it, must sell for its market value at the nearest market, and the amount it brings or would bring must be deducted from the value or the cost of the article in estimating the damage."   The magistrate refused this and other similar requests, and charged the jury: "That if the jury find that the shafting was of no value to the plaintiff he had a right to refuse to accept it and sue for the value."   The jury found a verdict for $57.92, the whole amount of the claim and the statutory penalty; and on appeal the judgment of the magistrate's court on the verdict was affirmed by the Circuit Court.

We think the legal proposition relied on by defendant's counsel is sound and well established by authority in this State and elsewhere. A carrier having goods in possession for transportation acquires no title to them. As the goods remain the property of the owner, his right of action against the carrier is for the entire value of the goods if lost or made entirely worthless by the carrier's default; and in case of destruction of value the recovery is not affected by the owner's acceptance or his refusal to accept the goods. On the other hand, if the value is merely impaired by actual injury in the hands of the carrier, or by delay in the carrier, the consignee is bound to receive the goods; and his right of action is limited to the impairment of value due to delay in carriage or injury to the goods.

In *Nettles* v. *S. C. R. R. Co.*, 7 Rich. 190, the action was for the value of a shipment of wool hats which were much injured by being boxed up for several months, when they should have been transported and delivered in a few days. The Court held: "The goods, even after great delay in the carriage of them, belonged to the plaintiff. When they were tendered to him, he should have accepted them; and thereby the extreme measure of damages would have been reduced, by deduction therefrom of the value of the goods, according to their condition at the time and place of tender."

It will be observed that the point involved in that case was not loss resulting from mere delay in delivery, but from actual injury to the goods received in the course of transportation. Indeed, on the point under discussion it is impossible to distinguish in principle between damage due to delay and damage due to impairment of value by physical injury to the goods. Neither the actual injury nor the delay in transportation amounts to conversion as long as the goods retain a substantial value.

. The rule was applied to delayed freight in *Cousar* v. *So. Ry.*, 82 S. C. 307, 64 S. E. 391, and in *Bullock* v. *C. & W. C. Ry.*, 82 S. C. 375, 64 S. E. 234.

In *Shaw* v. *S. C. R. R. Co.*, 5 Rich. 462, a considerable quantity of a shipment of molasses had leaked out because of injury to the casks in the course of transportation. The Court, holding that the consignee must receive the molasses that was left and sue for the value of that which leaked out, quoted with approval the following statement of the principle made in *Smith* v. *Griffin*, 3 Hill (N. Y.) 333: "If goods are wholly lost or destroyed, the owner is entitled to their full worth at the time of such loss or destruction. In trover, the measure of damages is the value of the goods at the time and place of conversion, with interest; or, perhaps, at any time between that and the trial. And, upon the same principle, if the goods are partially injured, and the party seeks redress for the qualified damage, the measure should be in like proportion." The Court recognized and applied the same principle in *Miami Powder Co.* v. *Port Royal, etc., Ry. Co.*, 38 S. C. 78, 16 S. E. 339, 21 L. R. A. 123, and in *Wall* v. *Atlantic Coast Line R. R. Co.*, 71 S. C. 337, 51 S. E. 95.

These cases are in accord with the authorities elsewhere. 3 Hutchinson on Carriers, 1365 and 1372; *Mich. Co.* v. *Bivens*, 13 Ind. 263; *Gulf Co.* v. *Pitts*, 37 Tex. Civ. App., 212, 83 S. W. 727; *Gulf Co.* v. *Everett*, 37 Tex. Civ. App. 167; 83 S. W. 257; *Silverman* v. *Ry.*, 51 La. Ann. 1785; 26 So. 447; *Dudley* v. *Ry.*, 58 W. Va. 604, 52 S. E. 718, 3 L. R. A. (N. S.) 1135, 112 Am. St. Rep. 1027, and *Parson* v. *U. S. Express Co.*, 144 Iowa 745, 123 N. W. 776.

The case of *Berley* v. *C., N. & L. R. R. Co.*, 82 S. C. 232, 64 S. E. 397, was relied on by respondents' counsel as holding that a consignee could refuse to receive goods injured in transportation, but still having a substantial value, and recover the full value. It is perfectly obvious from the following language of the decree that the recovery

was allowed on the ground that the evidence admitted of the inference that when the goods arrived they had no substantial value. "The defendant first submits the point that the plaintiff could not recover one dollar and eighty-four cents, the entire amount of the claim, because the evidence for the plaintiff shows that the entire value of the piping was only one dollar and eighty-four cents; that it was not lost, but only injured, and that after the injury it was of some value. The plaintiff, Kyzer, testified the piping was so broken as to be of no value to him, though 'it might have been worth something to somebody.' This mere conjecture of value by the plaintiff does not warrant this Court in holding there was no evidence to support the judgment of the magistrate that the piping was a complete loss, especially when it is considered that Hook, defendant's agent at Irmo, testified the defendant admitted and allowed the whole claim after investigation."

Still, we do not think there should be a reversal in this case. While there can be no doubt that if the shafting in its bent condition had a substantial value the consignees were bound to receive it and give the carrier credit for the net amount realized from its due disposition, when the evidence is looked at in a practical way we think it shows that the shafting could not have had any appreciable net value in the hands of the consignees. According to the evidence it had no value except as old iron, worth from fifty-five to seventy-seven cents. The actual outlay for handling and delivery to a purchaser would not have been much less than this small sum, so that the net value of the bent shafting in the hands of consignees, if anything at all, was too insignificant to count in the practical administration of justice.

As the judgment must be affirmed on the undisputed evidence in the case, it is unnecessary to consider the exception charging error in the admission of testimony that the defendant offered to pay the claim without the penalty.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

Petition for rehearing refused by formal order filed July 5, 1912.

Mr. Justice Watts *disqualified.*